UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CANDYRIFIC, LLC,

      PLAINTIFF

v.

DAVID JOSEPH CATANZARO,

      DEFENDANT.

CIVIL ACTION NO.  3-15-cv-209-CRS

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff CandyRific, LLC ("CandyRific") files this Complaint for Declaratory Judgment against defendant David Joseph Catanzaro ("Catanzaro"), alleging as follows:

### INTRODUCTION

1.     This is an action based on the patent laws of the United States, Title 35 of the United States Code, for a declaratory judgment that United States Patent No. 7,653,959 ("the '959 Patent") is unenforceable and not infringed by CandyRific, either directly or as an inducing or contributory infringer.

### PARTIES

2.     CandyRific is a Kentucky limited liability company having an address and principal place of business at 3738 Lexington Road, Louisville, Kentucky 40207.

3.     Upon information and belief, Catanzaro is an individual having an address at 286 Upper Powderly Street, Carbondale, Pennsylvania 18407.

## JURISDICTION AND VENUE

4.    CandyRific seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

5.    An actual controversy exists between CandyRific and Catanzaro as a result of Catanzaro's assertion of rights under the '959 Patent. Catanzaro has asserted on numerous occasions that CandyRific infringes the '959 Patent.

6.    This Court has personal jurisdiction over Catanzaro by virtue of the fact that, upon information and belief, Catanzaro and/or his licensees have regularly solicited business in this state.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, among other reasons, Catanzaro is subject to personal jurisdiction in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## RELEVANT FACTS

8.    CandyRific promotes, markets, offers for sale and sells goods in the field of novelty confectionary combined with unique features, including, *inter alia*, candy dispensers in the shape of recognized characters. CandyRific has licenses with some of the world's most well-known brands, such as M&M'S®, Skittles®, Star Wars™, Disney™, Warner Bros., Universal, DreamWorks™, and others.

9.    CandyRific is the owner of various unique product lines that feature recognized characters that, among other utilitarian functions, store and/or dispense confections.

10.     Upon information and belief, the '959 Patent, entitled "Article Assembly," issued to Catanzaro on February 2, 2010.  Broadly, the '959 Patent describes an article assembly that includes an article having a receivable end and a stand in the shape of feet.

## The Terminal Disclaimer

11.     The '959 Patent is a continuation of U.S. Application No. 08/777,032 filed on December 30, 1996, which issued as U.S. Pat. No. 6,026,532 ("the '532 Patent").

12.     During the prosecution of the application for the '959 Patent, apparently as a result of an Interview with Examiner Graham of U.S. Patent and Trademark Office ("PTO") on or about August 13, 2001, Examiner Graham would issue a double patenting rejection in view of the claims of the '532 Patent.

13.     To overcome the potential double patenting rejection, Catanzaro executed a Terminal Disclaimer on or about August 27, 2001, and then mailed that Terminal Disclaimer on the PTO on September 1, 2001.  Exhibit A.

14.     The Terminal Disclaimer executed by Catanzaro states, in relevant part, that "[t]he owner [Catanzaro] hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent [the '532 Patent] are commonly owned."  Exhibit A at p. 2.

## The Unenforceability of the '959 Patent

15.     Mr. Catanzaro assigned the '532 Patent to Church & Dwight Co., Inc. on or about February 28, 2011.  *See* Exhibit B.  Subsequently, the '532 Patent expired for failure to pay maintenance fees.

16.     Catanzaro retained ownership rights to the '959 Patent, and Catanzaro continues to hold himself out as the sole owner of the '959 Patent.

17.     According to Catanzaro's own statements to the PTO in the Terminal Disclaimer, made under penalty of perjury, the '959 Patent is unenforceable because Catanzaro assigned his ownership rights in the '532 Patent to Church & Dwight Co., Inc. but retained ownership of the '959 Patent.

18.     It is well-established that, if the ownership of a disclaimed patent is separated from the prior patent, the disclaimed patent is not enforceable.

19.     Indeed, Courts recognize that it is "binding Federal Circuit precedent" that "if the ownership of a disclaimed patent is separated from the prior patent, the disclaimed patent is not enforceable." *Email Link Corp. v. Treasure Island, LLC*, 2012 U.S. Dist. LEXIS 138042 (D. Nev. Sept. 25, 2012) (citing *Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*, 774 F.2d 483, 485 (Fed. Cir. 1985)).

20.     Here, the '959 Patent was immediately rendered unenforceable upon Catanzaro's assignment of the '532 patent to Church & Dwight Co., Inc. on or about February 28, 2011.

**Catanzaro's Legal Admissions of Unenforceability of the '959 Patent**

21.     On May 2, 2013, Catanzaro filed a legal malpractice claim against the intellectual property counsel that represented him in connection with the transfer of the '532 Patent to Church & Dwight Co., Inc. *Catanzaro v. Seaman Garson LLC et al.*, Case No. 1:13-cv-00996 (N.D. Ohio) ("*Seaman Garson* Litigation").

22.     In his Complaint, Catanzaro alleged that his attorney and law firm committed legal malpractice by advising Catanzaro to transfer the '532 Patent to Church & Dwight Co., Inc., which rendered the '959 Patent unenforceable. *Seaman Garson* Litigation, Dkt. No. 1 at ¶¶ 24, 26, attached hereto as Exhibit C.

23.     Catanzaro also alleged that he "had been contemplating 10 different patent infringement claims that he could make under the 959 Patent from which he now believed he is foreclosed from pursuing by virtue of Defendants' Malpractice." Exhibit C, ¶ 30.

24.     Catanzaro further alleged that "[t]he 959 Patent would have been enforceable to December 2016." Exhibit C, ¶ 31 (emphasis added).

25.     The U.S. District Court for the Northern District of Ohio determined that the case could not proceed until Catanzaro obtained a judicial determination that the '959 Patent is unenforceable based upon the Terminal Disclaimer. Accordingly, that court dismissed Catanzaro's case without prejudice to permit Catanzaro to file a patent enforcement action against an alleged infringer and obtain such a judicial determination.

### Catanzaro's Improper Attempts to Use the *Seaman Garson* Litigation to Obtain Confidential Information from CandyRific

26.     Before the *Seaman Garson* Litigation was dismissed, on August 1, 2014, Catanzaro's counsel served a subpoena *duces tecum* on CandyRific demanding production of "[a]ll documents reflecting revenues derived from manufacture, sale, or distribution of M&M's character flashlight with clip products." Exhibit D.

27.     CandyRific's legal counsel served written objections to the subpoena *duces tecum* on August 25, 2014, refusing to produce any documents because CandyRific's products were not involved in the *Seaman Garson* Litigation, the requested documents were confidential commercial information protected under Fed. R. Civ. P. 45(d)(3)(b), and the subpoena imposed undue burden and expense on CandyRific. CandyRific's legal counsel therefore urged Catanzaro withdraw the improper subpoena *duces tecum*.

28.    Just over one month later, in October 2014, CandyRific received a second
subpoena *duces tecum* from Catanzaro's new legal counsel in connection with the *Seaman
Garson* Litigation, which was nearly identical to the first subpoena served on it in August.

29.    CandyRific's legal counsel contacted Catanzaro's new legal counsel to advise him
that CandyRific had objected to the first subpoena and to inquire as to the basis for the renewed
demand for documents.

30.    Catanzaro's new legal counsel in the *Seaman Garson* Litigation responded to
CandyRific's counsel as follows:

Mr. Ward: I did not receive the objection letter from Mr. Catanzaro's prior counsel – can you please send it to me. To
shed some light on why Mr. Catanzaro is seeking such information, he is current pursuing a legal malpractice action
whereby he is asserting that he lost his right to enforce patent number 7,553,059. A component of our damages claim is
that Mr. Catanzaro lost his right to enforce his patent and collect damages against a number of potential infringers
including CandyRific. I am hopeful that any objections can be withdrawn in light of this information. If you wish to
speak further about the matter please call me at 440-243-8311

Exhibit E.

31.    Catanzaro, through his legal counsel, thus admitted again that the '959 Patent is
unenforceable and, as such, that Catanzaro cannot collect damages against accused infringers
such as CandyRific. *See* Exhibit E.

**Catanzaro's Attempted Enforcement of a Patent He Knows is Unenforceable**

32.    In spite of his repeated legal admissions that the '959 Patent is unenforceable due
to lack of common ownership with the '532 Patent, Catanzaro nevertheless is attempting to
enforce the '959 Patent against CandyRific in bad faith to extort a significant licensing fee from
it.

33.    In an email dated January 15, 2015, CandyRific's legal counsel received an
anonymous demand from a patent holder who identified himself as "Mr. Joseph" using the email
address mrjpatent@gmail.com.  "Mr. Joseph" informed CandyRific's counsel that he had a

patent infringement complaint prepared and ready to file against CandyRific, and he demanded

that CandyRific enter into a Litigation Standstill Agreement while the parties attempted to

resolve the matter. *See* Exhibit F.

34.     The January 15, 2015 email, however, did not disclose the asserted patent, the

allegedly infringing products, or the true identity of the patent holder.

35.     "Mr. Joseph" contacted CandyRific's legal counsel again on January 23, 2015,

demanding a response to his January 15, 2015 email. CandyRific's legal counsel responded by

requesting additional information about the identity of "Mr. Joseph" and the patent that is

allegedly infringed.

36.     "Mr. Joseph" responded at 1:21 a.m. on January 26, 2015, threatening to file suit

against CandyRific and all of CandyRific's distributors and retailers. "Mr. Joseph" asserted as

follows:

> If a lawsuit is 'served' against Candyrific, it will also include as defendants, <u>ALL retailers that Candyrific supply's/sells product to</u> During the discovery stage. ALL retailers will be obligated to provide sales numbers for the infringing product line (I know this first hand)
>
> It has been my experience, that retailers sometimes will provide sales numbers for the 'whole product category' not just for the accused product(s) And, ALL retailers will have to answer 'separate' interrogatories along with potential individual depositions
>
> I could see how retailers might become a bit disengaged with Candyrific after releasing this 'sensitive information,' especially during this very though economic time, not to mention the fact that Candyrific has a clean litigation record  Also, I am aware that Candyrific must indemnify every buyer and this may lead to significant legal expenses

Exhibit G.

37.     "Mr. Joseph" thus warned that, unless CandyRific entered into a settlement

agreement, "Mr. Joseph" would purposefully disturb CandyRific's relationship with its

distributors and retailers by dragging them into a patent infringement lawsuit and seeking

burdensome discovery from them. *See* Exhibit G.

38.    On January 30, 2015, CandyRific's legal counsel responded to "Mr. Joseph" first to inform him that CandyRific believed he was Catanzaro and to urge Catanzaro to drop the matter because the '959 Patent is unenforceable. Exhibit H. CandyRific's legal counsel further added that, even if the '959 Patent were not unenforceable, it is not infringed by CandyRific. *Id.*

39.    Then, on February 17, 2015, an email was sent from mrjpatent@gmail.com, the email address previously utilized by "Mr. Joseph," identifying the sender as David Joseph Catanzaro, the defendant to this litigation. Exhibit I.

40.    Catanzaro's February 17, 2015 correspondence enclosed a draft complaint asserting that CandyRific infringes the '959 Patent (Exhibit J), along with a rudimentary claim chart that purports to compare the claims of the '959 Patent with various CandyRific products (Exhibit K).

41.    On information and belief, Catanzaro is asserting the '959 Patent, which he knows to be unenforceable, against CandyRific to either extort an improper licensing fee from CandyRific or obtain a judgment that the '959 Patent is unenforceable so that it may pursue its legal malpractice claim against the intellectual property counsel that represented him in connection with the transfer of the '532 Patent to Church & Dwight Co., Inc.

42.    CandyRific believes that its products do not infringe any valid claim of the '959 Patent. CandyRific further believes that the '959 Patent is unenforceable.

43.    As a result of the aforementioned email correspondence from Catanzaro and based on the threats made therein and in the draft complaint for patent infringement (Exhibit J), CandyRific has a reasonable fear and apprehension that Catanzaro will commence an action for patent infringement against it in the United States. An actual and justiciable controversy therefore exists between the parties.

44.    Without a declaration of non-infringement and/or unenforceability, Catanzaro will continue wrongly and improperly asserting the '959 Patent against CandyRific, thereby causing CandyRific significant injury.

## COUNT I:  DECLARATORY JUDGMENT OF UNENFORCEABILITY

45.    The allegations set forth in paragraphs 1 through 44 of this Complaint are incorporated by reference as though fully set forth herein.

46.    CandyRific contends that the '959 Patent is unenforceable because it does not share common ownership with the '532 Patent, the prior patent that was disclaimed in the Terminal Disclaimer executed on or about August 27, 2001.

47.    Catanzaro has attempted to enforce the '959 Patent against CandyRific, demonstrating his belief that the '959 Patent is enforceable.

48.    An actual controversy exists between CandyRific and Catanzaro as to whether the '959 Patent is unenforceable.

49.    CandyRific is entitled to a judgment against Catanzaro that the '959 Patent is unenforceable.

## COUNT II:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT

50.    The allegations set forth in paragraphs 1 through 49 of this Complaint are incorporated by reference as though fully set forth herein.

51.    Catanzaro contends that products made, used, sold, offered for sale, or imported by CandyRific infringe the '959 Patent.

52.    CandyRific denies Catanzaro's contentions and alleges that its products do not directly or indirectly infringe the '959 Patent.

53.    An actual controversy exists between CandyRific and Catanzaro as to whether the accused products infringe the '959 Patent.

54.    CandyRific is entitled to a judgment against Catanzaro that CandyRific does not infringe and has not infringed, directly or indirectly, contributorily or by inducement, the '959 Patent.

## PRAYER FOR RELIEF

WHEREFORE, CandyRific prays for relief against Catanzaro as follows:

(a)    For a declaration that the '959 Patent is unenforceable;

(b)    For a declaration that CandyRific does not infringe and has not infringed, directly or indirectly, the '959 Patent;

(c)    For an award of CandyRific's costs and expenses in this action;

(d)    For an award of CandyRific's attorney's fees pursuant to 35 U.S.C. § 285; and

(e)    For such other relief as the Court may deem just and proper.


Dated: March 11, 2015

/s/ Joel T. Beres
T. Morgan Ward, Jr.
Joel T. Beres
David W. Nagle, Jr.
STITES & HARBISON PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Email: mward@stites.com
        jberes@stites.com
        dnagle@stites.com
COUNSEL FOR PLAINTIFF,
CANDYRIFIC, LLC





Patent

## THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: | David Catanzaro |
| Serial No.: | 09/505,791 |
| Filed: | 17 February 2000 |
| Title: | ARTICLE ASSEMBLY |

Examiner:    Gary Graham

Group Art Unit:    1744

RECEIVED
SEP - 6 2001
TC 1700

## TERMINAL DISCLAIMER

Hon. Commissioner
  Of Patents & Trademarks
Washington, D.C. 20231

Dear Sir:

    This Terminal Disclaimer is to overcome a potential double patenting rejection for the

above-identified case.

DATE MAILED: _____ 9/1/01 _____

0: 0:/2001 KHOLDER1 00000110 09505791
0: :0:043                    55.00 OP

CORRECTION OF PATENTS                                    1490

PTO/SB/26 (10-99)
Approved for use through 5/30/2000. OMB 0651-0031
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid. OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PRIOR PATENT | Docket Number (Optional) |
|---|---|

| In re Application of: | David Catanzaro |
|---|---|
| Application No.: | 09/505,791 |
| Filed: | February 17, 2000 |
| For: | Article Assembly |



The owner, _David Catanzaro_ , of ___100___ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 to 156 and 173, is presently shortened by any terminal disclaimer of prior Patent No. _6,026,532_ . The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 to 156 and 173 of the prior patent, as presently shortened by any terminal disclaimer, in the event that it later expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. ☐  For submissions on behalf of an organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. ☐  The undersigned is an attorney of record.

Signature _____    Date  8/27/01

David Catanzaro
Typed or printed name

☒  Terminal disclaimer fee under 37 CFR 1.20(d) included.

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO 96/96 may be used for making this statement. See MEPP § 324.

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Assistant Commissioner for Patents, Washington, DC 20231.

Rev. 1, Feb. 2000

3/4/2015                                     Assignment Search: 6026532



# Assignment Details
# **26415-151**: ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).

| Date Recorded | Reel/Frame | Pages |
|---|---|---|
| Jun 9, 2011 | 26415-151 | 2 |


## **Assignor**

**CATANZARO, DAVID** Feb 28, 2011

## **Assignee**

**CHURCH & DWIGHT CO., INC.**
469 NORTH HARRISON STREET LAW DEPT. -- PATENTS
PRINCETON, NEW JERSEY UNITED STATES OF AMERICA 08543-5297

## **Correspondent**

**JANET B. RUBINSTEIN**
469 NORTH HARRISON STREET
CHURCH & DWIGHT CO., INC. LAW DEPT.
PRINCETON, NJ 08543-5297

3/4/2015                                    Assignment Search: 6026532

## Properties (1 total)

| Title | Application | Publication | Patent | International Registration Number | PCT |
|---|---|---|---|---|---|
| **TOOTHBRUSH ASSEMBLY** Inventors: DAVID CATANZARO | 08777032 Dec 30, 1996 | | 6026532 Feb 22, 2000 | | |

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 15 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 1 of 12 PageID #: 15
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   1 of 12.   PageID #: 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID CATANZARO                              :
286 Upper Powderly Street                    :
Carbondale, PA 18407                         :
                                             :
    Plaintiff                             :
                                             :    Case No.
    Vs.                                   :
                                             :    Judge
SEAMAN GARSON LLC/LLP                        :
Rockefeller Building, 16th Floor             :    Magistrate Judge
614 W. Superior Avenue                       :
Cleveland, Ohio 44113                        :
                                             :    JURY DEMAND
    and                                   :    ENDORSED HEREON
                                             :
James A. DeRoche                             :
Rockefeller Building, 16th Floor             :
614 S. Superior Avenue                       :
Cleveland, Ohio 44113                        :
                                             :
    and                                   :
                                             :
Wayne D. Porter, Jr.                         :
1370 Ontario Street, #600                    :
Cleveland, Ohio 44113-1752                   :
                                             :
    and                                   :
                                             :
John and Jane Doe                            :
Seamon Garson LLC                            :
Rockefeller Building, 16th Floor             :
614 W. Superior Avenue                       :
Cleveland, Ohio 44113                        :
                                             :

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 16 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 2 of 12 PageID #: 16
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   2 of 12.   PageID #: 2

and                                          :
                                             :
John  or Jane Doe                            :
Law Offices of Wayne Porter, Jr.             :
1370 Ontario Street, #600                    :
Cleveland, Ohio 44113-1752                   :
                                             :
        Defendants                           :


## COMPLAINT

1.      This action is brought in Legal Malpractice resulting from the Defendants'

failure to properly represent Plaintiff in a Patent Infringement suit entitled "David

Catanzaro  v.  Procter & Gamble, et al, a Middle District of Pennsylvania Case No. 3:08-

CV2231.


2.      As a result of the Defendants' representation, Plaintiff was induced to enter a

"Patent Purchases, Assignment and Settlement Agreement" which caused Plaintiff to

alienate his interest in U.S. Patent No. 6,026,532 ("the 532 Patent") and in the process

neglected to preserve and thereby rendered ineffective the Plaintiff intellectual property

interest in a "Continuation Patent" U.S. No. 7, 653,959 (The "959" Patent.")

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 17 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 3 of 12 PageID #: 17
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   3 of 12.   PageID #: 3

## THE PARTIES

3.     Plaintiff David Catanzaro is an individual, a resident of the State of Pennsylvania.  David Catanzaro is a novice inventor and holds utility patents.

4.     Defendant Seamon Garson LLC is a Law Firm incorporated in the State of Ohio with offices in Cleveland, Ohio.

5.     James A. DeRoche is an attorney practicing in Cleveland, Ohio with the firm of Seamon Garson.  DeRoche was engaged by Plaintiff Catanzaro to represent his interests in the Catanzaro v.  Procter & Gamble, et al case.  At all times herein DeRoche was acting within the scope of his partnership, ownership, employment and/or Agency with the Seamon Garson Firm.

6.     Wayne D. Porter, Jr. is a Cleveland, Ohio Lawyer and is the owner and founder of the Wayne D. Porter, Jr. Law firm and at all times was acting in the scope of his engagement by Seamon Garson as Co-Counsel in the Catanzaro v. Procter & Gamble lawsuit and equally shared in the contingent fee collected by Seamon Garson and the Porter firm in that settlement.

7.     The John or Jane Doe Defendants are any personnel at the Seamon Garson firm or the Wayne D. Porter firm who had responsibility for reviewing the 532

3

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 18 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 4 of 12 PageID #: 18
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   4 of 12.   PageID #: 4

and the 959 Patents along with their case history and evaluating them in terms of the

Settlement Agreement language in the Catanzaro Litigation.

## JURISDICTION AND VENUE

8.     The amount in controversy exceeds Seventy-Five Thousand and

00/100 ($75,000.00) dollars and jurisdiction is proper by Diversity of Citizenship under

28 USC § 1332 (a)(1).   This Court's exclusive jurisdiction is also proper in that the

Plaintiffs' right to relief necessarily depends on a resolution of a substantial question of

Federal Patent Law under 28 USC § 1338(a).

9.     Venue is proper in Ohio Court because portions of the business

conducted were conducted out of business offices in this venue and the Defendants all

reside in this venue.

## FACT ALLEGATIONS

10.     David Catanzaro is an Independent Investor who has twice obtained

patents on design utility of his making from the U.S. Patent Office.

11.     The first patent was U.S. Patent No. 6,026,532 (hereinafter "The 532

Patent").   This patent was obtained on February 22, 2000.   It featured a utility patent

design featuring a toothbrush, a stand for the brush in the shape of feet and bristle cover.

The foot stand and bristle cover are so designed that when combined with the brush itself,

4

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 19 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 5 of 12 PageID #: 19
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   5 of 12.   PageID #: 5

viewed together the two components with the brush form the embodiment of a desired animate or inanimate object. The desired embodiment could also be achieved without utilizing the toothbrush cover. The foot stand having a recess to accept the toothbrush therein, is the main claimed feature of the patent. The foot stand of the 532 Patent can only accept a toothbrush therein.

12.    The second patent was U.S. Patent No, 7,653,959 (hereinafter "The 959 Patent"). This patent was obtained as a continuation of and on the 532 Patent and featured the design of the foot stand as its essential component itself. Like the 532 Patent, the 959 would maintain the same limitations on foot stand, but this Continuation Patent was obtained to expand the range of other possible articles other than a toothbrush, which could be inserted into the foot stand.

13.    Over time Catanzaro took note of a variety of products whose design infringed upon both of his patents.

14.    On December 15, 2009, Catanzaro filed an action "Pro se" in the U.S. District Court for the Middle District of Pennsylvania entitled David Catanzaro v. Procter and Gamble, et al. The case was assigned #3:08 CV 02231. This action was brought against Procter and Gamble Co. and Church & Dwight Co. for manufacturing, imposing, using and offering for sale a children's product line named "Spinbrush" which, it was alleged, infringed on Catanzaro's 532 Patent.

5

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 20 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 6 of 12   PageID #: 20
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   6 of 12.   PageID #: 6

15. Plaintiff Catanzaro understood that he could not prosecute the case successfully on his own behalf and sought legal counsel by searching the internet using search engines that assured searches that the attorney handled "Intellectual Property Disputes".

16. In such a search Catanzaro found a website posted by Defendant Seaman Garson advertising Defendant James A. DeRoche and citing "Intellectual Property Disputes" as one of his "areas of practice".

17. In March of 2009, Catanzaro contacted DeRoche and negations were instituted to hire DeRoche to take representation of Catanzaro in the Case of "David Catanzaro vs. Procter and Gamble et al."

18. On April 2, 2009, Defendant DeRoche sent Plaintiff Catanzaro a letter outlining the "terms" of his and Seaman Garson's representation of Catanzaro in "Catanzaro vs. Procter and Gamble, et al", and requesting that Catanzaro sign and return a copy of the letter as agreeing to the "terms" of representation. Catanzaro so agreed and signed the letter of representation. (See Exhibit "A" attached hereto).

19. The pertinent "terms" to the agreement were as follows: The case would be handled jointly by Seaman Garson, LLP and the Law Offices of Wayne D. Porter, Jr. who would share equally in a contingent fee of 40%. The case would be transferred to the Northern District Of Ohio where the law firms officed.

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 21 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 7 of 12   PageID #: 21
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   7 of 12.   PageID #: 7

20.     Catanzaro filed a Motion To Transfer The Case to the Northern District of Ohio on April 26, 2009. The motion was drafted by Seaman Garson and Porter but signed "Pro se" by Catanzaro.

21.     A report and recommendation was filed in the Middle District of Pennsylvania Court recommending that the Motion to Transfer be denied on June 26, 2009.

22.     This prompted DeRoche, Seaman Garson and Porter to draft a Second Amended Complaint, as filed, and a Leave To File on July 7, 2009 and this Second Amended Complaint, was again, in Catanzaro's name Pro se. An order transferring the case to the Northern District of Ohio was granted on February 8, 2010. The transfer was journalized in Ohio on February 23, 2010.

23.     The Discovery was held in 2010 and the parties agreed to mediation held on February 14, 2011.

24.     As settlement to the Mediation, Plaintiff Catanzaro was advised by his attorneys, Defendants Seaman Garson, DeRoche and Porter to "sell and assign all right, title and interest in the 532 Patent to Church and Dwight" and to grant a license to use (non-exclusive) and enter into a covenant not to sue Procter and Gamble and Church and Dwight under the 959 Patent. In return for the purchase and assignment of the 532 Patent and license and Covenant on the 959 Patent, Plaintiff was paid One Hundred Twenty-Five Thousand and 00/100 ($125,000.00) dollars. Payment was made in Trust to

7

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 22 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 8 of 12 PageID #: 22
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   8 of 12.   PageID #: 8

Attorney-Defendant Wayne Porter. Porter and Seaman Garson and DeRoche received 40% of that amount plus costs advanced and the balance was paid to Catanzaro. (See Exhibit "B" attached hereto).

25.     Catanzaro proceeded to enforce infringement claims utilizing the 959 Patent. He resolved five (5) such claims for several hundred thousand dollars.

26.     In early May 2012 while negotiating an infringement claim against Elmer's Products, Inc., (Elmer's Glue) on the 959 Patent, Catanzaro was informed by the attorney for Elmer's that he had lost his rights in the 959 Patent because Church & Dwight had purchased the 532 Patent, thus rendering the "Continuation Patent" unenforceable. The attorney from Elmer's further stated that there was a "Terminal Disclaimer" filed within the case file of the 959 Patent, which states that the 532 and the 959 Patent must be jointly owned by the same owner, for the 959 Patent to be enforceable. He further went on to state that a Terminal Disclaimer is mandatory instated by the Patent and Trademark Office when a Continuation Patent has similar claims to the parent patent.

Immediately after the Elmer's meeting Catanzaro found out that Church & Dwight had allowed the 532 Patent to expire for non-payment of the final maintenance fee which was due in February 2012.

27.     Catanzaro contacted Defendant Wayne Porter immediately. Porter was traveling but promised to address the issue by mid-month. Catanzaro requested that

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 23 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 9 of 12 PageID #: 23
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13  9 of 12.  PageID #: 9

Porter contact Church & Dwight and Procter and Gamble to give him the opportunity to

enforce his 959 Patent or reacquire rights under the 532.

        28.    In late June, Porter emailed Catanzaro:

        "C&D is not interested in assigning the expired patent to you.  No
reason was given."

        29.    Defendant DeRoche had also been contacted by Catanzaro and
DeRoche's response:

        From:  David Catanzaro
        Thu, June 28, 2012

        Wayne:

        Please keep me updated today as to what you and Jim have
discussed regarding C&D.

        James A. DeRoche
        Thu, June 28, 2012

        I am not discussing anything regarding C&D with anybody.  As far as
I am concerned the matter is closed.

        30.    Plaintiff Catanzaro had been contemplating 10 different patent

infringement claims that he could make under the 959 Patent from which he now believed

he is foreclosed from pursuing by virtue of Defendants' Malpractice.  The companies

include McDonald's Corp.; The Walt Disney Company; Mattel Inc.; Crayola LLC; the

M&M Company; and others.

        31.    The 959 Patent would have been enforceable to December 2016.

Case 3:15-cv-00554-MEM   Document 6-1   Filed 04/20/15   Page 24 of 67
Case 3:15-cv-00209-CRS   Document 1-3   Filed 03/12/15   Page 10 of 12 PageID #: 24
Case: 1:13-cv-00996-DAP   Doc #: 1   Filed: 05/02/13   10 of 12.  PageID #: 10

Defendants, collectively, failed to protect Plaintiff's interest in the 959 Patent while negotiating the Mediation Agreement, though fully aware of Plaintiff's desire to enforce the 959 Patent against other infringers.

## COUNT ONE – PROFESSIONAL NEGLIGENCE

Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 31 of the Complaint as if fully restated herein.

32.     At all times relevant, Defendants had a duty to act in accordance with the standard of care to which attorneys, including those practicing patent law, are held.

33.     Defendants' acts and omissions while representing Plaintiff violated and fell below the applicable standard of care in the legal profession.

34.     As a direct and proximate result of Defendants' malpractice, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT TWO – RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 34 of the Complaint as if fully restated herein.

35.     At all times relevant hereto, Defendants DeRoche, Porter, Jr., John and Jane Doe's were acting in the course and scope of their respective partnerships,

Case 3:15-cv-00554-MEM    Document 6-1    Filed 04/20/15    Page 25 of 67
Case 3:15-cv-00209-CRS    Document 1-3    Filed 03/12/15    Page 11 of 12 PageID #: 25
Case: 1:13-cv-00996-DAP    Doc #: 1    Filed: 05/02/13    11 of 12.    PageID #: 11

employment and/or agencies with their law firms and were partners, employees and/or agents of their firms.

36.    As partners, employees and/or agents, Defendants' wrongful conduct as set forth herein is deemed to be the conduct of Defendants Seamon Garson.

37.    Accordingly, Seamon Garson are liable for the wrongful or negligent acts or omissions of their partners, employees and/or agents.

Case 3:15-cv-00554-MEM Document 6-1 Filed 04/20/15 Page 26 of 67
Case 3:15-cv-00209-CRS Document 1-3 Filed 03/12/15 Page 12 of 12 PageID #: 26
Case: 1:13-cv-00996-DAP Doc #: 1 Filed: 05/02/13 12 of 12. PageID #: 12

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a)     Award Plaintiff compensatory damages in excess of $75,000.00;

(b)     Award Plaintiff his reasonable attorneys fees and costs; and

(c)     Grant such further relief as may be just and proper.

Respectfully submitted,


s/MICHAEL P. CASSIDY
MICHAEL P. CASSIDY - #0001087
Cassidy & Associates
Attorney for Plaintiff
11221 Pearl Road
Strongsville, Ohio 44136
(440) 846-0000 Ext. 222
(440) 846-9770 – Facsimile


## JURY DEMAND

Plaintiff hereby demands a trial by jury.

s/MICHAEL P. CASSIDY



COOPER
— & —
ELLIOTT

2175 Riverside Drive
Columbus, Ohio 43221
tel  614-481-6000
fax  614-481-6001

August 1, 2014


**VIA CERTIFIED U.S. MAIL**

Candyrific
3738 Lexington Road
Louisville, Kentucky  40207

      Re:   **Catanzaro v. Seamon Garson, et al.**
            Case No. 1:13-cv-996

Dear Sir or Madam:

      Enclosed is a subpoena for documents in connection with the above-captioned matter.  In lieu of producing the documents for inspection at your place of business as noted in the subpoena, I would appreciate if you would send copies of the documents to my office at the address on this letterhead.  I would also request that the documents be provided in electronic format if possible.

      Thank you in advance for your cooperation in this regard.  If you have any questions, please do not hesitate to contact me.

            Very truly yours,

            Barton R. Keyes

BRK/tmk

Enclosure

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Kentucky ☑

| | |
|---|---|
| David J. Catanzaro | )<br>) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. N.D. Ohio 1:13-cv-996 |
| Seaman Garson LLC/LLP, et al. | )<br>) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       Candyrific, 3738 Lexington Road
          Louisville, Kentucky 40207

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All documents reflecting revenues derived from manufacture, sale, or distribution of M&M's character flashlight with clip products.

| Place: 3738 Lexington Road<br>Louisville, Kentucky 40207 | Date and Time:<br>08/15/2014 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/1/14

|  CLERK OF COURT | |
|---|---|
| | OR — *Barton R Keyes* |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
plaintiff, David J. Catanzaro_____, who issues or requests this subpoena, are:
Barton R. Keyes, Cooper & Elliott LLC, 2175 Riverside Drive, Columbus, Ohio 43221, (614) 481-6000, bardk@cooperelliott.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. N.D. Ohio 1:13-cv-996

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*

❑ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                ; or

❑ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                for travel and $                for services, for a total of $        0.00

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc.:

## Smith, Melissa

| | |
|---|---|
| **From:** | Joseph J. Triscaro <jtriscaro@demarcotriscaro.com> |
| **Sent:** | Friday, October 31, 2014 8:29 AM |
| **To:** | Ward, Morgan |
| **Subject:** | RE: Catanzaro v. Seamon Garson -- subpoena sent to CandyRific, LLC |

Mr. Ward: I did not receive the objection letter from Mr. Catanzaro's prior counsel -- can you please send it to me. To shed some light on why Mr. Catanzaro is seeking such information, he is current pursuing a legal malpractice action whereby he is asserting that he lost his right to enforce patent number 7,653,959. A component of our damages claim is that Mr. Catanzaro lost his right to enforce his patent and collect damages against a number of potential infringers, including CandyRific. I am hopeful that any objections can be withdrawn in light of this information. If you wish to speak further about the matter please call me at 440-248-8811.

Joe

Joseph J. Triscaro, Esq.
DeMarco & Triscaro, Ltd.
30505 Bainbridge Road, Suite 110
Solon, Ohio 44139
Tel: (440) 248-8811
Fax: (440) 248-1599
E-mail: jtriscaro@demarcotriscaro.com
www.demarcotriscaro.com

**From:** Ward, Morgan [mailto:MWARD@stites.com]
**Sent:** Thursday, October 30, 2014 5:29 PM
**To:** jtriscaro@demarcotriscaro.com
**Subject:** Catanzaro v. Seamon Garson -- subpoena sent to CandyRific, LLC

Joe, to follow on my voicemail left a few minutes ago, I represent CandyRific with respect to the subpoena that you sent to them. CandyRific previously received a nearly identical subpoena from another lawyer acting on behalf of Mr. Catanzaro, and we served an objection to that subpoena. I wanted to know whether you have a copy of the letter that we sent objecting to that subpoena under Rule 45. I'm puzzled as to why my client has been served with another subpoena.

Please give me a ring.

Thanks,

**T. Morgan Ward, Jr.**
*Member*
*Direct: 502-681-0406*
*Mobile: 502-419-3242*
*Fax: 502-779-8337*
*mward@stites.com*
STITES  HARBISON PLLC
400 West Market Street, Suite 1800, Louisville, KY 40202-3352
About Stites & Harbison

NOTICE:This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure

1

compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**Smith, Melissa**

| | |
|---|---|
| **From:** | Mr. Joseph <mrjpatent@gmail.com> |
| **Sent:** | Thursday, January 15, 2015 12:14 PM |
| **To:** | Ward, Morgan |
| **Subject:** | Patent Infringement |
| **Attachments:** | Elmer's_-_Litigation_Standstill_Agmt_(partially_signed_2012.02.23).pdf |

Dear Mr. Ward,

Based upon information I currently obtained, it is my belief that you represent a company named Candyrific, LLC.

I am a patent holder and believe that Candyrific is selling products which may infringe on my patent.

I currently have agreements/licensing agreements with a number of well known international companies regarding the patent at issue and the names of several of those companies are as follows:

JAKKS Pacific, Inc.
Hasbro, Inc.

Crayola, LLC (a Hallmark Cards, Inc. Company)

K'NEX Brands L.P.

Avon Products, Inc.

Crazy-Art, LLC
Bee International

I am prepared to fully disclose a few of the above agreements (the confidentiality terms within each allow me to do so) if or when we open a dialog under agreeable terms.

1

My goal at the moment is to discuss the claims of my patent as they pertain to your clients product and determine whether or not a mutually satisfactory arrangement can be reached between us prior to any formal litigation. Although I have a Patent Infringement complaint already prepared and ready to file against your client, my desire is to resolve this matter amicably before getting outside counsel involved or moving the case forward Pro se (I've already been through Federal Litigation a few times and I consider myself fairly versed in the process). I would be more then willing to resolve this instant matter for reasonable consideration if given the opportunity.

I seek to avoid a situation where a declaratory relief action is filed preemptively in a jurisdiction of Candyrific's choosing. I propose that Candyrific, LLC. agrees to enter into the below four point Litigation Standstill Agreement ("Standstill Agreement") preserving the status quo to enable us to discuss and/or meet to see if this matter can be resolved.

All the above stated companies from which I have agreements solely on the patent at issue, have entered into a 'Litigation Standstill Agreement' ultimately foregoing the litigation process, allowing them and I to resolve our issue in a quick proficient manner.

Please have your client consider entering into the following four point Standstill Agreement .

Standstill Agreement

1.    Candyrific, LLC. and Mr. Joseph ("Patent Owner") (" The Parties") will have a discussion period for a term of thirty five (35) days ("Discussion Period") which will begin on 1-16-15. During the Discussion Period, all communications and information exchanged between the parties will be governed by Rule 408 of the Federal Rules of Evidence, which governs settlement, compromise offers and negotiations.

2.    As soon as the Discussion Period commences, Patent Owner will provide Candyrific, LLC with (i) the patent that allegedly infringes; (ii) a claim chart; and (iii) the complaint and attachments.

3.   Patent Owner will not take any legal action against Candyrific, LLC, including, without limitation, the filing of any action or lawsuit for patent infringement during the Discussion Period. Similarly, Candyrific, LLC will not take any action or legal action against Patent Owner, including, without limitation, the filing of any declaratory judgment action against the patent at issue until 14 days after the end of the Discussion Period.

4.   Candyrific, LLC agrees that during the Discussion Period, it will not disclose the patent, the patent number, or the name of the inventor to any third party other than its financial and legal advisers.

If the above four terms/points are agreeable, all I would need is a reply email stating:

"Candyrific. LLC is in agreement with the four point Standstill Agreement

sent/emailed on 1.15.15"

Once I receive your email, I will email all stated information as outlined in point two above within 24 hours. (Again, I will also send/disclose a few agreements I already stated I have in place with the patent at issue)

The above stated four point agreement is being proposed to expedite this process. In the alternative, I have attached a full 'Litigation Standstill Agreement' that Elmer's Products, Inc. (the Elmer's glue company) entered into. It is reflective of the Standstill Agreements I used in many negotiations which led to the above mentioned settlements / licensing agreements. If Candyrific, LLC were more agreeable entering into a standstill agreement like the one attached, I would accommodate that request. But, if you are agreeable entering into the above four point agreement, please email back stating so.

Regards,

Mr. Joseph

3

## Smith, Melissa

| | |
|---|---|
| **From:** | Mr. Joseph <mrjpatent@gmail.com> |
| **Sent:** | Monday, January 26, 2015 12:21 AM |
| **To:** | Ward, Morgan |
| **Cc:** | Nagle, David |
| **Subject:** | Re: Patent Infringement |

Dear Mr. Ward,

I am disappointed that you are currently unwilling to discuss this matter with your client within the context of the proposed 4 point Standstill agreement. The proposed agreement truly preserves the status quo and would allow your client to clearly understand the merits of this matter or lack thereof prior to any formal fillings.

If a lawsuit is 'served' against Candyrific, it will also include as defendants, ALL retailers that Candyrific supply's/sells product to. During the discovery stage, ALL retailers will be obligated to provide sales numbers for the infringing product line (I know this first hand).

It has been my experience, that retailers sometimes will provide sales numbers for the 'whole product category' not just for the accused product(s). And, ALL retailers will have to answer 'separate' interrogatories along with potential individual depositions.

I could see how retailers might become a bit disengaged with Candyrific after releasing this 'sensitive information,' especially during this very though economic time, not to mention the fact that Candyrific has a clean litigation record. Also, I am aware that Candyrific must indemnify every buyer and this may lead to significant legal expenses.

My intent, truly, is not to be distant and adversarial, but to be open and reasonable supplying Candyrific with every piece or relevant material associated with this matter.

The above reasons alone should give you pause to reconsider entering into an agreement with myself and Candyrific. And, there is other specific information you and Candyrific should be aware of prior to any formal fillings. Again, Candyrific has nothing to lose by entering into a four week discussion period and as I stated, I will supply you with ALL RELEVANT INFORMATION. Then, if you and Candyrifif believe the matter has NO merit, we can still go down the road of prolonged litigation, but at the very least, you and Candyrific will be fully informed.

Regards,

Mr. Joseph

On Fri, Jan 23, 2015 at 3:13 PM, Ward, Morgan <MWARD@stites.com> wrote:

Dear Mr. Joseph,

1

I can't to recommend to any client that we or the client enter into an agreement (a) with a party that has not identified itself or (b) concerning a subject matter that is unknown.

As it stands, we have no idea who you are and we don't know what you're talking about when you threaten a patent infringement claim. If you want us to consider your request, we need to know whom we're dealing with.   And if you think my client has infringed a patent, please identify the patent and the conduct that you feel is at issue. Without this information, we cannot evaluate your request.

**T. Morgan Ward, Jr.**
*Member*
*Direct: 502-681-0406*
*Mobile: 502-419-3242*
*Fax: 502-779-8337*
*mward@stites.com*

STITES   HARBISON PLLC
400 West Market Street, Suite 1800, Louisville, KY 40202-3352
**About Stites & Harbison**

NOTICE: This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**From:** Mr. Joseph [mailto:mrjpatent@gmail.com]
**Sent:** Friday, January 23, 2015 10:34 AM
**To:** Ward, Morgan
**Subject:** Re: Patent Infringement

Dear Mr. Ward,

Please provide a response to the email I sent on January 15, 2015.

Thanks,

2

Mr. Joseph

On Thu, Jan 15, 2015 at 1:14 PM, Mr. Joseph <mrjpatent@gmail.com> wrote:

Dear Mr. Ward,

Based upon information I currently obtained, it is my belief that you represent a company named Candyrific, LLC.

I am a patent holder and believe that Candyrific is selling products which may infringe on my patent.

I currently have agreements/licensing agreements with a number of well known international companies regarding the patent at issue and the names of several of those companies are as follows:

JAKKS Pacific, Inc.
Hasbro, Inc.

Crayola, LLC (a Hallmark Cards, Inc. Company)

K'NEX Brands L.P.

Avon Products, Inc.

Crazy-Art, LLC
Bee International

I am prepared to fully disclose a few of the above agreements (the confidentiality terms within each allow me to do so) if or when we open a dialog under agreeable terms.

My goal at the moment is to discuss the claims of my patent as they pertain to your clients product and determine whether or not a mutually satisfactory arrangement can be reached between us prior to any formal litigation. Although I have a Patent Infringement complaint already prepared and

3

ready to file against your client, my desire is to resolve this matter amicably before getting outside counsel involved or moving the case forward Pro se (I've already been through Federal Litigation a few times and I consider myself fairly versed in the process). I would be more then willing to resolve this instant matter for reasonable consideration if given the opportunity.

I seek to avoid a situation where a declaratory relief action is filed preemptively in a jurisdiction of Candyrific's choosing. I propose that Candyrific, LLC. agrees to enter into the below four point Litigation Standstill Agreement ("Standstill Agreement") preserving the status quo to enable us to discuss and/or meet to see if this matter can be resolved.

<u>All the above stated companies from which I have agreements solely on the patent at issue, have entered into a 'Litigation Standstill Agreement' ultimately foregoing the litigation process, allowing them and I to resolve our issue in a quick proficient manner.</u>

Please have your client consider entering into the following four point Standstill Agreement .

Standstill Agreement

1.    Candyrific, LLC. and Mr. Joseph ("Patent Owner") (" The Parties") will have a discussion period for a term of thirty five (35) days ("Discussion Period") which will begin on 1-16-15. During the Discussion Period, all communications and information exchanged between the parties will be governed by Rule 408 of the Federal Rules of Evidence, which governs settlement, compromise offers and negotiations.

2.    As soon as the Discussion Period commences, Patent Owner will provide Candyrific, LLC with (i) the patent that allegedly infringes; (ii) a claim chart; and (iii) the complaint and attachments.

3.    Patent Owner will not take any legal action against Candyrific, LLC, including, without limitation, the filing of any action or lawsuit for patent infringement during the Discussion Period. Similarly, Candyrific, LLC will not take any action or legal action against Patent Owner, including,

4

without limitation, the filing of any declaratory judgment action against the patent at issue until 14 days after the end of the Discussion Period.

4.    Candyrific, LLC agrees that during the Discussion Period, it will not disclose the patent, the patent number, or the name of the inventor to any third party other than its financial and legal advisers.

If the above four terms/points are agreeable, all I would need is a reply email stating:

"Candyrific. LLC is in agreement with the four point Standstill Agreement

sent/emailed on 1.15.15"

Once I receive your email, I will email all stated information as outlined in point two above within 24 hours. (Again, I will also send/disclose a few agreements I already stated I have in place with the patent at issue)

The above stated four point agreement is being proposed to expedite this process. In the alternative, I have attached a full 'Litigation Standstill Agreement' that Elmer's Products, Inc. (the Elmer's glue company) entered into. It is reflective of the Standstill Agreements I used in many negotiations which led to the above mentioned settlements / licensing agreements.  If Candyrific, LLC were more agreeable entering into a standstill agreement like the one attached, I would accommodate that request. But, if you are agreeable entering into the above four point agreement, please email back stating so.

Regards,

Mr. Joseph

**Smith, Melissa**

| | |
|---|---|
| **From:** | Ward, Morgan |
| **Sent:** | Friday, January 30, 2015 3:39 PM |
| **To:** | Mr. Joseph (mrjpatent@gmail.com) |
| **Cc:** | Nagle, David; jtriscaro@demarcotriscaro.com |
| **Subject:** | RE: Patent Infringement |

Mr. Catanzaro (a/k/a Mr. Joseph):

Based on our further research and investigation, I presume that your true identity is David Catanzaro. Since you have been corresponding with me directly, I presume that you are not represented by counsel in this matter. However, in an exercise of caution, I am copying Mr. Triscaro on this email, since I corresponded with him previously in connection with the case of *Catanzaro v. Seamon Garson, et al.*

One behalf of CandyRific, I again decline to execute a Standstill Agreement or enter into any negotiations at all, at least until you can identify the patent(s) in issue and provide an explanation of your infringement contentions. Reviewing your patent portfolio, we note that U.S. Patent No. 6,026,532 was assigned to another entity, Church & Dwight Co. Inc., and then expired for failure to pay maintenance fees. It appears that you are still the record owner of U.S. Patent No. 7,653,959. However, in the case of *Catanzaro v. Seamon Garson, et al.*, you expressly acknowledged that U.S. Patent No. 7,653,959 is unenforceable. Indeed, it appears that the whole basis of the lawsuit in *Catanzaro v. Seamon Garson, et al.* was that you could no longer pursue infringement claims because of the unenforceability of U.S. Patent No. 7,653,959. Even setting that issue aside, you have not provided any identification of CandyRific products in issue or any explanation as to how the claims of U.S. Patent No. 7,653,959 are relevant to any CandyRific products, and we are highly skeptical that there is any infringement issue or risk whatsoever. Finally, we note that you are identified as an inventor with respect to U.S. Patent No. 8,936,205, which just issued; however, it also appears to have no relevance to any CandyRific products.

If you persist with unsubstantiated infringement allegations, please be advised that my client will take all appropriate action to defend itself, including seeking recovery of its attorneys' fees and costs pursuant to 35 U.S.C. 285, which expressly provides for the recovery of attorneys' fees in exceptional (or baseless) cases.

We intend to consider this matter to be closed, and I strongly suggest that you do the same.

Regards,

**T. Morgan Ward, Jr.**
*Member*
*Direct: 502-681-0406*
*Mobile: 502-419-3242*
*Fax: 502-779-8337*
*mward@stites.com*
**STITES  HARBISON** PLLC
400 West Market Street, Suite 1800, Louisville, KY 40202-3352
About Stites & Harbison

NOTICE:This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**From:** Mr. Joseph [mailto:mrjpatent@gmail.com]
**Sent:** Monday, January 26, 2015 1:21 AM
**To:** Ward, Morgan
**Cc:** Nagle, David
**Subject:** Re: Patent Infringement

Dear Mr. Ward,

I am disappointed that you are currently unwilling to discuss this matter with your client within the context of the proposed 4 point Standstill agreement. The proposed agreement truly preserves the status quo and would allow your client to clearly understand the merits of this matter or lack thereof prior to any formal fillings.

If a lawsuit is 'served' against Candyrific, it will also include as defendants, ALL retailers that Candyrific supply's/sells product to. During the discovery stage, ALL retailers will be obligated to provide sales numbers for the infringing product line (I know this first hand).

It has been my experience, that retailers sometimes will provide sales numbers for the 'whole product category' not just for the accused product(s). And, ALL retailers will have to answer 'separate' interrogatories along with potential individual depositions.

I could see how retailers might become a bit disengaged with Candyrific after releasing this 'sensitive information,' especially during this very though economic time, not to mention the fact that Candyriffic has a clean litigation record.  Also, I am aware that Candyrific must indemnify every buyer and this may lead to significant legal expenses.

My intent, truly, is not to be distant and adversarial, but to be open and reasonable supplying Candyrific with every piece or relevant material associated with this matter.

The above reasons alone should give you pause to reconsider entering into an agreement with myself and Candyrific. And, there is other specific information you and Candyrific should be aware of prior to any formal fillings. Again, Candyrific has nothing to lose by entering into a four week discussion period and as I stated, I will supply you with ALL RELEVANT INFORMATION. Then, if you and Candyrifif believe the matter has NO merit, we can still go down the road of prolonged litigation, but at the very least, you and Candyrific will be fully informed.

Regards,

Mr. Joseph

On Fri, Jan 23, 2015 at 3:13 PM, Ward, Morgan <MWARD@stites.com> wrote:

Dear Mr. Joseph,

2

I can't to recommend to any client that we or the client enter into an agreement (a) with a party that has not identified itself or (b) concerning a subject matter that is unknown.

As it stands, we have no idea who you are and we don't know what you're talking about when you threaten a patent infringement claim.  If you want us to consider your request, we need to know whom we're dealing with.   And if you think my client has infringed a patent, please identify the patent and the conduct that you feel is at issue.  Without this information, we cannot evaluate your request.

**T. Morgan Ward, Jr.**
*Member*
*Direct: 502-681-0406*
*Mobile: 502-419-3242*
*Fax: 502-779-8337*
*mward@stites.com*

**STITES · HARBISON** PLLC
400 West Market Street, Suite 1800, Louisville, KY 40202-3352
About Stites & Harbison

NOTICE:This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**From:** Mr. Joseph [mailto:mrjpatent@gmail.com]
**Sent:** Friday, January 23, 2015 10:34 AM
**To:** Ward, Morgan
**Subject:** Re: Patent Infringement

Dear Mr. Ward,

Please provide a response to the email I sent on January 15, 2015.

Thanks,

Mr. Joseph

On Thu, Jan 15, 2015 at 1:14 PM, Mr. Joseph <mrjpatent@gmail.com> wrote:

Dear Mr. Ward,

Based upon information I currently obtained, it is my belief that you represent a company named Candyrific, LLC.

I am a patent holder and believe that Candyrific is selling products which may infringe on my patent.

I currently have agreements/licensing agreements with a number of well known international companies regarding the patent at issue and the names of several of those companies are as follows:

JAKKS Pacific, Inc.
Hasbro, Inc.

Crayola, LLC (a Hallmark Cards, Inc. Company)

K'NEX Brands L.P.

Avon Products, Inc.

Crazy-Art, LLC
Bee International

I am prepared to fully disclose a few of the above agreements (the confidentiality terms within each allow me to do so) if or when we open a dialog under agreeable terms.

My goal at the moment is to discuss the claims of my patent as they pertain to your clients product and determine whether or not a mutually satisfactory arrangement can be reached between us prior to any formal litigation. Although I have a Patent Infringement complaint already prepared and ready to file against your client, my desire is to resolve this matter amicably before getting outside counsel involved or moving the case forward Pro se (I've already been through Federal Litigation a

4

few times and I consider myself fairly versed in the process). I would be more then willing to resolve this instant matter for reasonable consideration if given the opportunity.

I seek to avoid a situation where a declaratory relief action is filed preemptively in a jurisdiction of Candyrific's choosing. I propose that Candyrific, LLC. agrees to enter into the below four point Litigation Standstill Agreement ("Standstill Agreement") preserving the status quo to enable us to discuss and/or meet to see if this matter can be resolved.

All the above stated companies from which I have agreements solely on the patent at issue, have entered into a 'Litigation Standstill Agreement' ultimately foregoing the litigation process, allowing them and I to resolve our issue in a quick proficient manner.

Please have your client consider entering into the following four point Standstill Agreement .

Standstill Agreement

1.    Candyrific, LLC. and Mr. Joseph ("Patent Owner") (" The Parties") will have a discussion period for a term of thirty five (35) days ("Discussion Period") which will begin on 1-16-15. During the Discussion Period, all communications and information exchanged between the parties will be governed by Rule 408 of the Federal Rules of Evidence, which governs settlement, compromise offers and negotiations.

2.    As soon as the Discussion Period commences, Patent Owner will provide Candyrific, LLC with (i) the patent that allegedly infringes; (ii) a claim chart; and (iii) the complaint and attachments.

3.    Patent Owner will not take any legal action against Candyrific, LLC, including, without limitation, the filing of any action or lawsuit for patent infringement during the Discussion Period. Similarly, Candyrific, LLC will not take any action or legal action against Patent Owner, including, without limitation, the filing of any declaratory judgment action against the patent at issue until 14 days after the end of the Discussion Period.

5

4.   Candyrific, LLC agrees that during the Discussion Period, it will not disclose the patent, the patent number, or the name of the inventor to any third party other than its financial and legal advisers.

If the above four terms/points are agreeable, all I would need is a reply email stating:

"Candyrific. LLC is in agreement with the four point Standstill Agreement

sent/emailed on 1.15.15"

Once I receive your email, I will email all stated information as outlined in point two above within 24 hours. (Again, I will also send/disclose a few agreements I already stated I have in place with the patent at issue)

The above stated four point agreement is being proposed to expedite this process. In the alternative, I have attached a full 'Litigation Standstill Agreement' that Elmer's Products, Inc. (the Elmer's glue company) entered into. It is reflective of the Standstill Agreements I used in many negotiations which led to the above mentioned settlements / licensing agreements.  If Candyrific, LLC were more agreeable entering into a standstill agreement like the one attached, I would accommodate that request. But, if you are agreeable entering into the above four point agreement, please email back stating so.

Regards,

Mr. Joseph

**Smith, Melissa**

| | |
|---|---|
| **From:** | Mr. Joseph <mrjpatent@gmail.com> |
| **Sent:** | Tuesday, February 17, 2015 10:55 AM |
| **To:** | Ward, Morgan |
| **Subject:** | Re: Patent Infringement |
| **Attachments:** | CandyRific_Complaint.pdf; Exhibit_A_959_Patent.pdf; Exhibit_B_14117611493.pdf; CandyRific_ Claim_ Chart.pdf; Products_&_Packaging.pdf |

Dear Mr. Ward,

I appreciate your response of January 30, 2014 and apologize for the delay getting this email and its attachments to you. Please do not contact Mr. Triscaro any further he does not represent me in this matter.

In a good faith effort, I have decided to provide you with all relevant information you requested. I have also included a preliminary complaint which contains all relevant facts regarding this matter.

After you review the attached material, I would have no problem sending you a few settlement /licensing agreements I have already obtained under the 959 patent if CandyRific decides they would like to settle this matter.

It is my desire that CandyRific and I can resolve this matter prior to any formal fillings.

Thanks,
David Joseph Catanzaro
570-282-4889

On Fri, Jan 30, 2015 at 4:38 PM, Ward, Morgan <MWARD@stites.com> wrote:

Mr. Catanzaro (a/k/a Mr. Joseph):


Based on our further research and investigation, I presume that your true identity is David Catanzaro. Since you have been corresponding with me directly, I presume that you are not represented by counsel in this matter. However, in an exercise of caution, I am copying Mr. Triscaro on this email, since I corresponded with him previously in connection with the case of *Catanzaro v. Seamon Garson, et al.*


One behalf of CandyRific, I again decline to execute a Standstill Agreement or enter into any negotiations at all, at least until you can identify the patent(s) in issue and provide an explanation of your infringement contentions. Reviewing your patent portfolio, we note that U.S. Patent No. 6,026,532 was assigned to another entity, Church & Dwight Co. Inc., and then expired for failure to pay maintenance fees. It appears that you are still the record owner of U.S. Patent No. 7,653,959. However, in the case of *Catanzaro v. Seamon Garson, et al.*, you expressly acknowledged that U.S. Patent No. 7,653,959 is unenforceable. Indeed, it appears that the whole basis of the lawsuit in *Catanzaro v. Seamon Garson, et al.* was that you could no longer pursue infringement claims because of the unenforceability of U.S. Patent No. 7,653,959. Even setting that issue aside, you have not provided any identification of CandyRific products in issue or any explanation as to how the claims of U.S. Patent No. 7,653,959 are relevant to any CandyRific products, and we are highly skeptical that there is any infringement issue or risk whatsoever. Finally, we note that you are identified as an inventor with respect to U.S. Patent No. 8,936,205, which just issued; however, it also appears to have no relevance to any CandyRific products.

1

If you persist with unsubstantiated infringement allegations, please be advised that my client will take all appropriate action to defend itself, including seeking recovery of its attorneys' fees and costs pursuant to 35 U.S.C. 285, which expressly provides for the recovery of attorneys' fees in exceptional (or baseless) cases.

We intend to consider this matter to be closed, and I strongly suggest that you do the same.

Regards,

**T. Morgan Ward, Jr.**
*Member*
*Direct: 502-681-0406*
*Mobile: 502-419-3242*
*Fax: 502-779-8337*
*mward@stites.com*

STITES · HARBISON PLLC
400 West Market Street, Suite 1800, Louisville, KY 40202-3352
About Stites & Harbison

NOTICE:This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**From:** Mr. Joseph [mailto:mrjpatent@gmail.com]
**Sent:** Monday, January 26, 2015 1:21 AM
**To:** Ward, Morgan
**Cc:** Nagle, David
**Subject:** Re: Patent Infringement

Dear Mr. Ward,

I am disappointed that you are currently unwilling to discuss this matter with your client within the context of the proposed 4 point Standstill agreement. The proposed agreement truly preserves the status quo and would allow your client to clearly understand the merits of this matter or lack thereof prior to any formal fillings.

If a lawsuit is 'served' against Candyrific, it will also include as defendants, ALL retailers that Candyrific supply's/sells product to. During the discovery stage, ALL retailers will be obligated to provide sales numbers for the infringing product line (I know this first hand).

It has been my experience, that retailers sometimes will provide sales numbers for the 'whole product category' not just for the accused product(s). And, ALL retailers will have to answer 'separate' interrogatories along with potential individual depositions.

I could see how retailers might become a bit disengaged with Candyrific after releasing this 'sensitive information,' especially during this very though economic time, not to mention the fact that Candyriffic has a clean litigation record. Also, I am aware that Candyrific must indemnify every buyer and this may lead to significant legal expenses.

My intent, truly, is not to be distant and adversarial, but to be open and reasonable supplying Candyrific with every piece or relevant material associated with this matter.

The above reasons alone should give you pause to reconsider entering into an agreement with myself and Candyrific. And, there is other specific information you and Candyrific should be aware of prior to any formal fillings. Again, Candyrific has nothing to lose by entering into a four week discussion period and as I stated, I will supply you with ALL RELEVANT INFORMATION. Then, if you and Candyrifif believe the matter has NO merit, we can still go down the road of prolonged litigation, but at the very least, you and Candyrific will be fully informed.

Regards,

Mr. Joseph

On Fri, Jan 23, 2015 at 3:13 PM, Ward, Morgan <MWARD@stites.com> wrote:

Dear Mr. Joseph,

I can't to recommend to any client that we or the client enter into an agreement (a) with a party that has not identified itself or (b) concerning a subject matter that is unknown.

As it stands, we have no idea who you are and we don't know what you're talking about when you threaten a patent infringement claim. If you want us to consider your request, we need to know whom we're dealing with.   And if you

think my client has infringed a patent, please identify the patent and the conduct that you feel is at issue. Without this information, we cannot evaluate your request.

**T. Morgan Ward, Jr.**
*Member*
*Direct: 502-681-0406*
*Mobile: 502-419-3242*
*Fax: 502-779-8337*
*mward@stites.com*

### STITES  HARBISON PLLC
400 West Market Street, Suite 1800, Louisville, KY 40202-3352
<u>About Stites & Harbison</u>

NOTICE: This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

**From:** Mr. Joseph [mailto:mrjpatent@gmail.com]
**Sent:** Friday, January 23, 2015 10:34 AM
**To:** Ward, Morgan
**Subject:** Re: Patent Infringement

Dear Mr. Ward,

Please provide a response to the email I sent on January 15, 2015.

Thanks,

Mr. Joseph

On Thu, Jan 15, 2015 at 1:14 PM, Mr. Joseph <mrjpatent@gmail.com> wrote:

Dear Mr. Ward,

Based upon information I currently obtained, it is my belief that you represent a company named Candyrific, LLC.


I am a patent holder and believe that Candyrific is selling products which may infringe on my patent.


I currently have agreements/licensing agreements with a number of well known international companies regarding the patent at issue and the names of several of those companies are as follows:


JAKKS Pacific, Inc.
Hasbro, Inc.

Crayola, LLC (a Hallmark Cards, Inc. Company)

K'NEX Brands L.P.

Avon Products, Inc.

Crazy-Art, LLC
Bee International


I am prepared to fully disclose a few of the above agreements (the confidentiality terms within each allow me to do so) if or when we open a dialog under agreeable terms.


My goal at the moment is to discuss the claims of my patent as they pertain to your clients product and determine whether or not a mutually satisfactory arrangement can be reached between us prior to any formal litigation. Although I have a Patent Infringement complaint already prepared and ready to file against your client, my desire is to resolve this matter amicably before getting outside counsel involved or moving the case forward Pro se (I've already been through Federal Litigation a few times and I consider myself fairly versed in the process). I would be more then willing to resolve this instant matter for reasonable consideration if given the opportunity.

I seek to avoid a situation where a declaratory relief action is filed preemptively in a jurisdiction of Candyrific's choosing. I propose that Candyrific, LLC. agrees to enter into the below four point Litigation Standstill Agreement ("Standstill Agreement") preserving the status quo to enable us to discuss and/or meet to see if this matter can be resolved.

<u>All the above stated companies from which I have agreements solely on the patent at issue, have entered into a 'Litigation Standstill Agreement' ultimately foregoing the litigation process, allowing them and I to resolve our issue in a quick proficient manner.</u>

Please have your client consider entering into the following four point Standstill Agreement .

Standstill Agreement

1.    Candyrific, LLC. and Mr. Joseph ("Patent Owner") (" The Parties") will have a discussion period for a term of thirty five (35) days ("Discussion Period") which will begin on 1-16-15. During the Discussion Period, all communications and information exchanged between the parties will be governed by Rule 408 of the Federal Rules of Evidence, which governs settlement, compromise offers and negotiations.

2.    As soon as the Discussion Period commences, Patent Owner will provide Candyrific, LLC with (i) the patent that allegedly infringes; (ii) a claim chart; and (iii) the complaint and attachments.

3.    Patent Owner will not take any legal action against Candyrific, LLC, including. without limitation, the filing of any action or lawsuit for patent infringement during the Discussion Period. Similarly, Candyrific, LLC will not take any action or legal action against Patent Owner, including, without limitation, the filing of any declaratory judgment action against the patent at issue until 14 days after the end of the Discussion Period.

4.   Candyrific, LLC agrees that during the Discussion Period, it will not disclose the patent, the patent number, or the name of the inventor to any third party other than its financial and legal advisers.


If the above four terms/points are agreeable, all I would need is a reply email stating:


"Candyrific. LLC is in agreement with the four point Standstill Agreement

sent/emailed on 1.15.15"


Once I receive your email, I will email all stated information as outlined in point two above within 24 hours. (Again, I will also send/disclose a few agreements I already stated I have in place with the patent at issue)


The above stated four point agreement is being proposed to expedite this process. In the alternative, I have attached a full 'Litigation Standstill Agreement' that Elmer's Products, Inc. (the Elmer's glue company) entered into. It is reflective of the Standstill Agreements I used in many negotiations which led to the above mentioned settlements / licensing agreements.  If Candyrific, LLC were more agreeable entering into a standstill agreement like the one attached, I would accommodate that request. But, if you are agreeable entering into the above four point agreement, please email back stating so.


Regards,

Mr. Joseph

7

IN THE UNITED STATES DISTRICT COURT

DAVID J. CATANZARO,
286 Upper Powderly Street
Carbondale, Pennsylvania 18407

        Plaintiff,

VS.

CANDYRIFIC, LLC:
and DOES 1 THROUGH 50

        Defendant.

Case No. _____

Judge_____

Magistrate Judge _____

JURY TRIAL DEMANDED

## PLAINTIFF'S VERIFIED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, David J. Catanzaro ("Plaintiff" or "Mr. Catanzaro"), complains of CandyRific, LLC

("CandyRific") as follows:

## I.    JURISDICTION.

1.    This is a claim for patent infringement under the patent laws of the United States, Title 35 of the United States Code. This Court and other federal district courts have exclusive jurisdiction over the subject matter of this case under 28 U.S.C.§ 1338(a).

## II.    VENUE.

2.    Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred. Further, venue is proper as to each defendant under 28 U.S.C. §1400(b).

## III.    PARTIES.

3.    Plaintiff currently resides at 286 Upper Powderly Street, Carbondale, Pennsylvania 18407. Plaintiff is the owner of United States Patent No. 7,653,959 B1 (the "'959 patent"), entitled "Article Assembly," that issued on February 2, 2010. Plaintiff has the sole right to sue for infringement of said patent. A copy of the '959 patent is attached hereto as **Exhibit A**.

4.    Upon information and belief, Defendant CandyRific is a Kentucky company with its principal place of business at 3738 Lexington Road, Louisville, Kentucky 40207

5.    Plaintiff does not know the true identities of fictitious Defendants Does 1 through 50, but reserves the right to amend this complaint to add said defendants upon discovery of their true identities.

6.    This court has personal jurisdiction over the named Defendant.

2

## IV. RELEVANT MATTER

7.      The "959 patent is a continuation of U.S. Patent No. 6,026,532 (the "532

patent") which was assigned to the Church & Dwight Co. on February 28, 2011, as part of

a settlement agreement during a patent infringement lawsuit ( *David Catanzaro v. Procter*

*& Gamble Co. et al.)*

8.      The "959 patent contained a Terminal Disclaimer whereby the Disclaimer

stated joint ownership of the "532 and "959 patent was required for the "959 patent to be

enforceable.

9.      It is believed Church & Dwight allowed the '532 patent to expire

intentionally in February, 2012 for lack of paying the required maintenance fee.

10 .     Plaintiff filed a legal malpractice case in the Northern District of Ohio on

May 2, 2013 against the attorneys who represented Plaintiff in the *Procter & Gamble Co.*

*et al.* lawsuit (*Case No. 1:13 CV 996 Catanzaro vs. Seamon Garson et al*).

11.      Within the pleadings of the above malpractice case Plaintiff alleged that he

was induced to enter into a Patent Purchase, Settlement Agreement which caused Plaintiff

to alienate his interest in the '532 patent and to give up his interest in the '959 patent.

12.      Defendants maintained that the '959 patent is still enforceable, and that

Plaintiff did not lose the right to enforce the '959 patent as a direct result of the expiration

of '532 patent.

13.      After near 20 months of litigation, Judge Dan A. Polster the presiding Judge

in the legal malpractice case issued an order on December 15, 2014 (hereto as **Exhibit B**)

stating that the court cannot issue an advisory opinion on the enforceability or

3

unenforceability of the '959 patent and demanded that a judicial determination or order must be made within the context of a Patent infringement lawsuit.

14.     Judge Dan A. Polster dismissed the case without prejudice and tolled the statue of limitations until there is a final judgment in a patent infringement litigation involving the '959 patent.

15.     As a direct result of information exchanged and obtained in the malpractice lawsuit, along with the directed order imposed by Judge Polster to obtain a final order in an infringement action to be able to reopen the malpractice case, Plaintiff has 'sufficient reason' to presently assert that the '959 patent is enforceable from the time it issued on February 2, 2010 up-and-until its expiration date of December 30, 2016, with the exception being, from February 2011 through February 2012 when the '532 patent was enforceable by Church and Dwight.

## V.     CLAIMS.

## COUNT I – DECLARATORY JUDGMENT

16.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 15, inclusive.

17.     An actual, present and justiciable controversy has arisen between Plaintiff and Defendant's regarding the '959 patent.

18.     Pursuant to 28 U.S.C. §§ 2201, *et seq*., Plaintiff seeks declaratory judgment from this Court that Defendant has infringed upon the '959 patent.

## COUNT II – PATENT INFRINGEMENT

19.     CandyRific transacts business in this judicial district related to the '959 patent, without a license or permission from Plaintiff. Defendant has infringed, induced others to

4

infringe, and/or contributorily infringed, literally or under the doctrine of equivalents, one

or more claims of the '959 patent.  Defendant did so by manufacturing, having

manufactured, importing, using, offering for sale and/or selling products that embody

and/or practice the patented invention, known as:

> *(1) M&M Character with Keychain and Flashlight, Clip and Candy (Product Line)*
>
> *(2) M&M Character with Keychain and Candy (Product Line)*
>
> *(3) M&M Character with Candy (Product Line)*
>
> *(4) M&M Star Wars Character with Keychain and Flashlight, Clip and Candy (Product Line)*
>
> *(5) Mickey & Minnie Mouse Character with Flashlight, Clip and Candy (Product Line)*
>
> *(6) Pac Man Character with Flashlight, Clip and Candy (Product Line)*
>
> *(7) Mummy & Pumpkin Character with Flashlight, Clip and Candy (Product Line)*

20.      Upon information and belief, Defendant manufactured, imported, used, offered

for sale and/or sold the above stated product lines after February 2, 2010.

21.      Defendant transacts business in this judicial district and has committed acts of

infringement in this judicial district by offering for sale and selling the stated product lines

after February 2, 2010.

22.      Plaintiff seeks damages for patent infringement against Defendant for the

maximum period of time permitted by law.

23.      Defendant has directly infringed claims 1, 2, 4, 5, 6, 7 & 8 of the '959 patent or

the equivalent thereof, in violation of 35 U.S.C. § 271(a).  Upon information and belief,

defendant has also infringed claims 1, 2, 4, 5, 6, 7 & 8 of the '959 patent or the equivalent

thereof, by knowingly and actively inducing others to infringe in violation of 35 U.S.C. §

271(b).

5

24.     Upon information and belief, Defendant's infringement of the '959 patent has been willful and deliberate.  Defendant's infringement has injured plaintiff.

## VI.    PRAYER FOR RELIEF.

WHEREFORE, plaintiff, David J. Catanzaro, respectfully requests that this Court enter Judgment against defendants and against their subsidiaries, successors, parents, affiliates, directors, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.     Issue a declaratory judgment stating that Defendant has infringed the '959 patent;

B.     Order an award of damages adequate to compensate plaintiff for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with pre-judgment and post-judgment interest;

C.     Issue a finding that Defendant's acts of infringement have been willful and ordering an award of increased damages as provided by 35 U.S.C. § 284;

D.     Order Defendant's to pay Plaintiff's reasonable attorney fees and costs of this action; and,

E.     Order such other relief that Plaintiff is entitled to under law and any other further relief that this Court or jury may deem just and proper.

## VII.    JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues presented in this complaint.

6

Respectfully submitted,

_____

David Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

INFRINGEMENT CONTENTIONS -- U.S. 7,653,959 B1

| Claim 1 | Defendants |
|---|---|
| | " M&M Character with Keychain and Flashlight, Clip and Candy"<br>"M&M Character with Keychain and Candy"<br>"M&M Character with Candy"<br>"M&M Star Wars Character with Keychain and Flashlight, Clip and Candy"<br>"Mickey & Minnie Mouse Character with Flashlight, Clip and Candy"<br>"Pac Man Character with Flashlight, Clip and Candy"<br>"Mummy & Pumpkin Character with Flashlight, Clip and Candy" |
| | Article Assembly |
| An Article Assembly Comprising: | Yes. The product is an article assembly. |
| a) an article having a receivable end, and | Yes. The article assembly has an article with a receivable end. |
| b) a stand in the shape of first and second feet, | Yes. The article assembly has a stand in the shape of first and second feet. |
| each of said first and second feet being elongated to define a toe end and together a common heel end, | Yes. Each of the first and second feet are elongated to define a toe end and together a common heel end. |
| said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, | Yes. Each of the first and second feet are joined together and positioned together to form a continuous bottom supporting structure. |
| said heel end of each of said first and second feet being positioned together to form a single heel portion, | Yes. The heel end of each of the first and second feet are positioned together to form a single heel portion. |
| said single heel portion including a recess extending through a topside thereof and towards a sole thereof for selectively receiving said receivable end of said article therein, | Yes. The single heel portion includes a recess extending through a topside thereof and towards a sole thereof for selectively receiving the receivable end of the article therein. |
| Thereby retaining said article when said stand is placed on a horizontal surface, | Yes. The article is retained when the stand is placed on a horizontal surface. |
| said first and second feet including a side surface, | Yes. The first and second feet include a side surface. |
| said side surfaces intersecting one another in a common plane. | Yes. The side surfaces intersect one another in a common plane or equivalent thereof. |

| Claim 2 | Defendants Stated Products<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 1, further comprising a base connected to a bottom side of said stand | Yes.  The Accused Products have all of the limitations of claim 1 and has a base connected to a bottom side of the stand. |

| Claim 4 | Defendants Stated Products<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 1, wherein said toe end of said first and second feet are at an acute angle to one another. | Yes.  The Accused Products have all of the limitations of claim 1 and several have a toe end of the first and second feet that are at an acute angle to one another. |

- 2 -

| Claim 5 | Defendants Stated Products Article Assembly |
|---|---|
| An Article Assembly Comprising: | Yes.  The product is an article assembly. |
| A stand in the shape of first and second feet, | Yes.  The article assembly has a stand in the shape of first and second feet. |
| each of said first and second feet being elongated to define a toe end and together a common heel end, | Yes.  Each of the first and second feet are elongated to define a toe end and together a common heel end. |
| said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, | Yes.  Each of the first and second feet are joined together and positioned together to form a continuous bottom supporting structure. |
| said heel end of each of said first and second feet being positioned together to form a single heel portion, | Yes.  The heel end of each of the first and second feet are positioned together to form a single heel portion. |
| said single heel portion including a recess extending through a topside thereof and towards a sole thereof, | Yes.  The single heel portion includes a recess extending through a topside thereof and towards a sole thereof. |
| said first and second feet including a side surface, | Yes.  The first and second feet include a side surface. |
| said side surfaces intersecting one another in a common plane. | Yes.  The side surfaces intersect one another in a common plane or equivalent thereof. |

| Claim 6 | Defendants Stated Products<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 5, further comprising a base connected to a bottom side of said stand | Yes.  The Accused Products have all of the limitations of claim 5 and has a base connected to a bottom side of the stand. |

| Claim 7 | Defendants Stated Products<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 6, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand. | Yes.  The Accused Products have all of the limitations of claim 6 and the base includes a recess extending therethrough and is in alignment with the recess in the stand. |

| Claim  8 | Defendants Stated Products<br><br>Article Assembly |
|---|---|
| The article assembly as claimed in claim 5, wherein said toe end of said first and second feet are at an acute angle to one another. | Yes.  The Accused Product has all of the limitations of claim 5 and several have a toe end of the first and second feet that are at an acute angle to one another. |

- 4 -

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

3 - 1 5 - c v - 2 0 9 - C R S

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Candyrific, LLC | David Joseph Catanzaro |

| (b) County of Residence of First Listed Plaintiff  Jefferson, KY | County of Residence of First Listed Defendant  Lackawanna, PA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Joel T. Beres, Stites & Harbison, PLLC | |
| 400 West Market Street, Ste. 1800, Louisville, KY 40202 | |
| (502) 587-3400 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☒ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S.C. Sections 2201 and 2202

Brief description of cause:
Plaintiff seeks a declaratory judgment regarding United States Patent No. 7,653,959 against Defendant

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 03/11/2015 | Joel T. Beres |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.  **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Kentucky

| | |
|---|---|
| CADYRIFIC, LLC | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No.   3-15-cv-209-CRS |
| DAVID JOSEPH CATANZARO | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   DAVID JOSEPH CATANZARO
286 Upper Powderly Street
Carbondale, PA  18407


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Joel T. Beres (jberes@stites.com)
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
(502) 587-3400

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  3-15-cv-209-CRS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                   _____
                                              *Printed name and title*


                                   _____
                                              *Server's address*

Additional information regarding attempted service, etc: